IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| CYNTHIA A. McINTIRE,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　　Defendant. | CV 10-107-BLG-RFC-CSO<br><br><br>**FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES<br>MAGISTRATE JUDGE** |

Plaintiff Cynthia A. McIntire ("McIntire") initiated this action to obtain judicial review of Defendant Commissioner of Social Security's ("Commissioner's") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c).  *Am. Cmplt. (Court Doc. 4).*  On November 10, 2010, this case was referred to the undersigned for all pretrial proceedings.  *Court Doc. 10.*

Now pending are the parties' cross-motions for summary

judgment.  *Court Docs. 12* (McIntire's motion) *and 15* (Commissioner's motion).  For reasons stated below, the Court recommends that McIntire's motion be denied, the Commissioner's motion be granted, and that the decision denying DIB and SSI be affirmed.

## I.   PROCEDURAL BACKGROUND

### A.   McIntire's Previous Action

As reflected in the record of *McIntire v. Astrue*, CV 08-20-BLG-RFC-CSO ("previous action"), a matter previously before this Court, McIntire filed prior DIB and SSI applications in August 2005.  *See* CV 08-20-BLG-RFC-CSO, *Court Doc. 22 at 2*.  McIntire alleged that she had been unable to work since August 1, 2002.  *Id*.  McIntire later amended her onset date to May 31, 2003.  *Id. at n.2*.

The Social Security Administration ("SSA") denied McIntire's previous applications initially and on reconsideration.  An Administrative Law Judge ("ALJ") held an administrative hearing on September 7, 2006, at which McIntire appeared with counsel.  *Id*.  The ALJ issued a written decision dated February 1, 2007, finding that McIntire was not disabled within the meaning of the Act.  The Appeals

Council denied McIntire's request for review.  *Id*.

McIntire then initiated an action in this Court.  In Findings and Recommendation filed on October 6, 2008, the undersigned recommended that the District Judge affirm the Commissioner's decision denying benefits.  *Id. at 10*.  This Court concluded that the ALJ's decision denying benefits was supported by substantial evidence in the record and was free of legal error.  *Id. at 9-10*.

On November 6, 2008, District Judge Cebull, after conducting a *de novo* review, determined that the undersigned's "Findings and Recommendation [were] well grounded in law and fact and adopt[ed] them in their entirety."  *See* CV 08-20-BLG-RFC-CSO, *Court Doc. 22 at 1-2*.  The Clerk of Court entered Judgment on the same day.  CV 08-20-BLG-RFC-CSO, *Court Doc. 24*.  McIntire did not appeal.

B.    **McIntire's Present Action**

McIntire filed her DIB and SSI applications that are the subjects of this action on October 5, 2007.  She alleges that she has been unable to work since February 5, 2007.  *Transcript of Administrative Record ("Tr.") at 150-63*.  The SSA denied her applications initially and upon

reconsideration.  *Tr. at 133-38, 142-43.*

On March 12, 2009, an ALJ held a hearing at which McIntire was represented by counsel.  *Tr. at 31-106.*  On June 22, 2009, the ALJ issued a written decision denying McIntire's claims.  *Tr. at 14-29.*  On July 8, 2010, after the Appeals Council denied McIntire's request for review, the ALJ's decision that McIntire was not disabled within the meaning of the Act became final for purposes of judicial review.  *Tr. at 1-5*; 20 C.F.R. §§ 404.981, 416.1481 (2010).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.   **STANDARD OF REVIEW**

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla, but less than a preponderance."  *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)).  "It is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks and citation

omitted).  The Court must consider the record as a whole, weighing both

the evidence that supports and detracts from the Commissioner's

conclusion, and cannot affirm the ALJ "by isolating a specific quantum

of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882

(9th Cir. 2006) (internal quotation marks and citation omitted).  The

ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities.  "Where the evidence is

susceptible to more than one rational interpretation, one of which

supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation

omitted).

## III.   **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant

has a medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months, and (2) the

impairment or impairments are of such severity that, considering the

claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)); 20 C.F.R. § 416.905(a).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past

relevant work, he or she is not disabled and the analysis ends here. *Id*. "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id*. at 1098-99.

5.  If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id*. The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.; *Id*. If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id*.

## IV.   THE ALJ's OPINION

The ALJ began his consideration of McIntire's claims by

recognizing the prior decision denying McIntire's previous claims. *Tr. at 14*. Because of the prior decision, the ALJ limited his consideration to the period of time following the date of the prior decision. *Id.*

The ALJ "noted that the denial of benefits creates a presumption of nondisability which can be overcome by evidence of changed circumstances" and that McIntire now "is alleging disability based on the same or similar impairments except her diabetes which is a new impairment but this is under control." *Id.* He later noted that McIntire "has presented no persuasive evidence in support of [her] subjective assertion" that "her condition[s] have worsened since the prior final decision." *Id. at 25*.

Finally, the ALJ concluded that "the medical and other evidence presented by [McIntire] demonstrates no significant change for the worse or deterioration in her condition which would overcome the presumption of continuing nondisability." *Id.*

The Court notes that McIntire does not challenge the ALJ's application of the presumption of continuing nondisability in this action. Neither party has raised the issue of whether McIntire's claims

are subject to a presumption of continuing nondisability.  *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (holding that *res judicata* applies "less rigidly" in administrative proceedings than in judicial proceedings); *Taylor v. Heckler*, 765 F.2d 872, 875-76 (9th Cir. 1985) (*res judicata* applies to the Commissioner's final decisions regarding disability; a decision denying benefits becomes binding on all parties and creates presumption of continuing nondisability).  Thus, the Court does not revisit here the ALJ's decision that the presumption applies to McIntire's claims brought in this action.

In considering McIntire's current claims, the ALJ followed the five-step sequential evaluation process.  First, the ALJ found that McIntire has not engaged in substantial gainful activity since the day after the prior final decision dated February 5, 2007.  *Tr. at 17.*  The precise date of the ALJ's prior written decision was February 1, 2007. *Tr. at 108, 128.*

Second, the ALJ found that McIntire has the following severe impairments: "obesity, arthritis by history with chronic pain, asthma, major depressive disorder and post traumatic stress disorder."  *Tr. at*

-9-

*17.*  The ALJ further determined that McIntire did not have severe impairments of bipolar and panic disorder or agoraphobia.  He concluded that McIntire's allegation that she suffered from these conditions is "not substantiated by sufficient signs, symptoms and findings under the 'paragraph A' criteria."  *Id.*

Third, the ALJ found that McIntire does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  *Tr. at 19.*

Fourth, the ALJ found that McIntire has the residual functional capacity ("RFC") to perform sedentary work as follows:

> The claimant has the ability to sit, stand and walk alternately for an 8-hour workday.  She has the ability to lift 10 pounds on an occasional basis and less than 10 pounds on a frequent basis.  She is unable to climb ladders and scaffolds and is unable to crawl, but she is able to perform all other postural activities (balancing, stooping, kneeling, crouching) on an occasional basis.  She should avoid concentrated exposure to extreme temperatures primarily cold, vibrations, hazards, and based on asthma, concentrated exposure to fumes, odors, dust and gas.  Regarding social limitations in the workplace due to mental impairments, she is able to tolerate brief superficial contact with the public as well as one-on-one contact on a frequent basis and contact with two to three people on an occasional basis, and should avoid work requiring extensive public contact.  She can tolerate work involving limited contact with co-workers and

tolerate supervision except work that would require over-the-shoulder or critical type of supervision. Due to effects of depression and anxiety on concentration, persistence or pace, she is limited to performing a routine job, which can be unskilled or low semi-skilled in nature, and there can be new learning but no more than occasionally. She should avoid work that requires a high constant degree of focus or that involves a high constant degree of stress throughout an 8-hour period of time.

*Tr. at 21-22.*

In assessing McIntire's RFC, the ALJ found that McIntire is able to perform her past relevant work as a loan officer-clerk because "[t]his work does not require the performance of physical and mental work-related activities precluded by [McIntire's] residual functional capacity." *Tr. at 27-28.* Thus, the ALJ found that McIntire was not disabled under the Act through the date of his decision – June 22, 2009. *Tr. at 28-29.*

## V.   **THE PARTIES' ARGUMENTS**

### A.   **McIntire's Arguments**

McIntire generally argues that the ALJ erred in three principal ways. First, McIntire argues that the ALJ ignored or failed to properly consider various portions of evidence favorable to her position. *McIntire's Br. in Support of Mtn. for Summary Judgment (Court Doc.*

*13) at 14*-21.  Second, she argues that the ALJ improperly discredited her subjective complaints.  *Id. at 22-27*.  Third, McIntire argues that the ALJ failed to include in the hypothetical question to the vocational expert all of her limitations.  *Id. at 27-28*.

More specifically, McIntire argues that the ALJ erred by: (1) "disregarding the findings of [McIntire's] various health care providers, all of which establish [McIntire's] underlying impairments of her low back and mental limitations including bipolar and panic disorder[,]" *McIntire's Br. in Support of Mtn. for Summary Judgment (Court Doc. 13) at 14*; (2) "disregarding the opinions of the treating health care provider, which specifically limited [McIntire's] ability to function independently outside of the home as a result of her anxiety related disorder[,]" *id.*; (3) "overstating the testimony of [McIntire's] daily activities, fully supported by all medical providers[,]" *id.*; and (4) "ignoring medical evidence of impairments secondary to [McIntire's] low back including disk bulges into both the right and left lateral recess and moderate bilateral facet arthropathy[,]" *id. at 14-15*.

In support of these allegations, McIntire first argues that the ALJ

improperly rejected evidence supporting her claims of major depressive disorder, PTSD, and bipolar and panic disorder. *Id. at 18-19.* She argues that the ALJ: (1) improperly rejected evidence supporting her claim that she suffers from side effects of her medications, *id. at 20*; (2) failed to set forth adequate reasons "to ignore the findings and medical [evidence] upon which" her "obesity, spinal stenosis, [and] obstructive sleep apnea" are based, *id. at 20-21*; and (3) failed to note the limitations these and other conditions cause her, *id.*

Second, McIntire argues that the ALJ erred in concluding that she is not entirely credible. *Id. at 22-27.* She argues that the ALJ erred in failing "to set forth any description of activities with such specificity as to allow the reviewing court to determine if such activities are inconsistent with [McIntire's] claim of disability." *Id. at 25.* McIntire argues that the medical records "fully support [her] testimony regarding her limitations imposed by both her mental and physical conditions." *Id. at 24.* She argues that the medical records support her "description of her low back pain, which was not found to be an impairment nor considered an impairment by the ALJ." *Id. at 24-25.*

Finally, McIntire argues that the ALJ erred in his consideration of the vocational expert's testimony.  She argues that the only hypothetical question asked of the vocational expert that incorporated all of her limitations resulted in the conclusion that she is precluded from all full-time work.  *Id. at 27-28.*

## B.   The Commissioner's Arguments

The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free from legal error.  *Def't's Br. (Court Doc. 16) at 12.*  First, the Commissioner argues that the ALJ reasonably concluded that bipolar disorder and panic disorder were not severe impairments.  *Id. at 2-4.*  He argues that: (1) there was no evidence presented that bipolar disorder and panic disorder with agoraphobia were severe impairments, as defined by the SSA's regulations, *id. at 3*; (2) Dr. Martin, the medical expert who testified at McIntire's hearing, stated that a bipolar disorder diagnosis was inappropriate because no evidence showed "the constellation of symptoms" for the diagnosis, *id.*; (3) Dr. Martin stated that panic disorder with agoraphobia was not present because McIntire went out at times, *id. at 3*; and (4) all

-14-

evidence upon which McIntire relies came from witnesses who are not acceptable medical sources under the regulations, *id. at 3-4.*

Second, the Commissioner argues that the ALJ properly determined McIntire's RFC. *Id. at 4-10.* He argues that the ALJ: (1) gave adequate reasons for his determination that McIntire was not fully credible, *id. at 5-8*; and (2) reasonably gave little weight to Ms. Patton's opinion, *id. at 8-10.*

Third, the Commissioner argues that the ALJ reasonably found McIntire not disabled at steps four and five of the sequential evaluation process. *Id. at 10.*

Finally, the Commissioner argues that McIntire's additional evidence submitted to the Appeals Council did not affect the ALJ's ultimate determination. *Id. at 10-12.* He argues that "the additional records show no additional deterioration in [McIntire's] condition during the period of time prior to the ALJ's decision." *Id. at 12.*

## VI.   <u>DISCUSSION</u>

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is

free of legal error.  For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court concludes that the ALJ's decision is based on substantial evidence and is free of legal error. Therefore, the Court recommends that it be affirmed.

## A.    **ALJ's Consideration of Evidence**

In evaluating McIntire's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a thoughtful, detailed decision that includes a thorough discussion of relevant medical evidence, opinions, and testimony.  *Tr. at 17-27*.  The ALJ prefaced this discussion by noting his "careful consideration of all the evidence[.]"  *Tr. at 15*.  While this declaration is not, by itself, definitive proof that the ALJ considered all

evidence that he said he considered, it does demonstrate his awareness of his obligation to do so.

More significantly, the ALJ also meticulously reviewed, as discussed further below, his rationale in making his assessment of McIntire's RFC and credibility. *Tr. at 17-27*. He set forth in his written decision the evidence – which the Court concludes is substantial – that informed and supported his conclusion with respect to McIntire's disability claim. *Id*. For these reasons, and after the Court's own review of the entire record, the Court finds unpersuasive McIntire's arguments that the ALJ failed properly to consider evidence favorable to her claims for DIB and SSI. In short, the ALJ did not err.

With respect to McIntire's specific claims of error, the Court concludes that:

(1) the ALJ did not err in concluding that sufficient signs, symptoms, and findings in the medical records did not support McIntire's claims of bipolar and panic disorder with agoraphobia. The ALJ expressly stated that he was relying upon the opinion of Dr. Marian Martin, a clinical psychologist who testified as a medical expert

at the hearing.  The ALJ noted that Dr. Martin, who reviewed the
medical records and heard the hearing testimony, concluded that
sufficient diagnostic criteria did not exist to substantiate bipolar or
panic disorder with agoraphobia.  *Tr. at 20*.  The ALJ explained that Dr.
Martin "concluded there is not a good substantiated diagnosis of
bipolar" because, despite the presence of "symptoms here and there in
the record" that "suggest bipolar[,]" the records "do not contain the
constellation of symptoms that necessarily meet the bipolar diagnostic
criteria."  *Id*.

Also, the ALJ correctly noted that the two sources upon whom
McIntire relies for these diagnoses, Sarah Wagner, a physicians'
assistant, and therapist Cynthia Boles, LCPC, are not "acceptable
medical sources" under the regulations who can provide evidence to
establish medically determinable impairments.  *Id. at 17* (citing 20
C.F.R. §§ 404.1513(a) and 416.913(a)).

Moreover, the ALJ did not err in rejecting the opinion of Amanda
Patton, MSRMHC, who indicated that McIntire had an "anxiety
disorder and complete inability to function independently outside the

-18-

area of one's home." *Tr. at 443*.  Ms. Patton also was not an acceptable

medical source, and her opinion was not entitled to controlling weight.

20 C.F.R. §§ 404.1513(a) and 416.913(a).  The ALJ also provided

germane reasons for rejecting her opinion.  He noted that Ms. Patton

offered no opinion regarding McIntire's mental capacity to work and

provided no useful information, such as observations or test results.  *Tr.*

*at 26*.  Instead, the ALJ noted, she based her opinion solely on

McIntire's subjective complaints.  *Id*.

(2) the ALJ did not ignore or fail to consider McIntire's low back

problems.  On the contrary, the ALJ expressly addressed McIntire's low

back pain and pain from arthritis, recognizing the "weak objective

medical evidence concerning [these] alleged physical issues" and

observing that "the arthritis diagnosis is based primarily on [McIntire's]

history" and her comments to "her doctor that she has arthritis." *Tr. at*

*17*.  Nevertheless, the ALJ stated that he "accorded [McIntire] the

benefit of the doubt that arthritis is medically determinable given that

her doctor continues to treat her symptomatically with anti-

inflammatory medications based on her history and that she has

intermittent lower back and right hip problems." *Id*.  Any evidence indicating functional limitations from low back pain came solely from McIntire's testimony which, as discussed below, the ALJ reasonably concluded was not fully credible.  Thus, the ALJ did not err in considering McIntire's low back pain.

(3) the ALJ did not err in his consideration of McIntire's claims of major depressive disorder, PTSD, bipolar and panic disorder, obesity, spinal stenosis, and obstructive sleep apnea.  As already noted above, the ALJ did not err in considering McIntire's bipolar and panic disorder with agoraphobia or her low back pain.

Also, the ALJ specifically acknowledged that McIntire is obese. He pointed to places in the medical records where health care providers urged McIntire to exercise to lose weight – advice she admittedly did not follow.  *Id. at 19, 23, 24*.  He also factored McIntire's functional limitations due to obesity into his consideration of her RFC.  *Id. at 21-25*.

With respect to McIntire's allegation of functional limitations caused by spinal stenosis, the ALJ appropriately considered it.  He

expressly stated that "there are no clinical findings of any significant spinal abnormalities or degenerative changes of her spine or joints." *Id. at 19.*

With respect to major depressive disorder and PTSD, the ALJ specifically concluded that McIntire suffers from these conditions and that they are "severe" under the Act. *Id. at 17.* He did not err, however, in failing to conclude that such conditions are so functionally limiting as to render McIntire incapable of performing substantial gainful activity. The ALJ first noted that McIntire's medically determinable impairments could reasonably be expected to cause the symptoms she alleges. But, he ultimately and, as discussed below, properly concluded that McIntire's statements about the intensity, persistence, and limiting effects of these symptoms are not fully credible. Thus, the ALJ did nor err.

### B.   ALJ's Assessment of McIntire's Credibility

McIntire argues that the ALJ erred in concluding that she is not entirely credible. *Court Doc. 13 at 22-27.* She argues that the ALJ "failed to set forth any description of activities with such specificity as

to allow the reviewing court to determine if such activities are inconsistent with [her] claim of disability." *Id. at 25.*

To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

An ALJ may take the lack of objective medical evidence into consideration when assessing credibility.  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004).  Inconsistencies in testimony may also be factored in such an assessment.  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).

The ALJ must also consider the factors set forth in SSR 88-13

including:

A.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

B.   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

C.   Type, dosage, effectiveness, and adverse side-effects of any pain medication;

D.   Treatment, other than medication, for relief of pain;

E.   Functional restrictions; and

F.   The claimant's daily activities.

SSR 88-13, *superseded in part on other grounds*, 95-5P; <u>see</u> <u>also</u> 20 C.F.R. § 404.1529(c)(3).

If, after engaging in this analysis, the ALJ rejects a claimant's subjective testimony of the severity of symptoms, the ALJ must cite specific, clear, and convincing reasons for doing so.  *Smolen*, 80 F.3d at 1283-84 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

Here, the Court concludes that the ALJ gave specific, clear, and convincing reasons for finding that McIntire was not entirely credible with respect to allegations that she is incapable of all work activity.  As an initial matter, however, the Court notes that the ALJ found McIntire

partially credible to the extent that "she is not symptom free and her symptoms are causing limitations." *Tr. at 24.* He, therefore, reduced her RFC accordingly to accommodate those limitations. *Tr. at 21-22.* Thus, the ALJ did not entirely reject McIntire's allegations as she seems to suggest. Rather, the ALJ was careful to parse out those allegations that he found credible from those that he found incredible, as he was required to do. And, the ALJ gave the following clear and convincing reasons for rejecting other portions of McIntire's allegations and making his credibility determination.

First, the ALJ found "minimal objective medical findings even in the new records presented at the hearing level" to support her allegations about the level of her pain and limitations. *Tr. at 24.* He noted that McIntire does not frequently mention her pain to care providers, but instead "talks mostly about abdominal issues." *Id.* The ALJ was permitted to rely on a lack of objective medical evidence to support his conclusion about McIntire's credibility. *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1197 (9th Cir. 2003) (concluding that lack of medical evidence of claims, in combination with

other bases, supported ALJ's finding that claimant was not credible).

Second, the ALJ found McIntire's claims of functional limitations inconsistent with other evidence of record.  For instance, the ALJ noted that McIntire's "alleged restriction of lying down almost all day other than a few hours is not very credible or believable when she has not mentioned the alleged restriction to Ms. Wagner who refills her medications[.]" *Tr. at 24*.  He also noted that McIntire "continues to take the medications on a regular basis which suggests that she benefits from these medications." *Id*.  Also, the ALJ noted McIntire has no signs of muscle weakness, which one might expect if McIntire were sleeping all of the time except for a few hours a day for the past two years. *Id*.

Third, the ALJ noted that Ms. Wagner, the physicians' assistant who manages McIntire's medications, has never indicated that there is any medical basis for McIntire to need excessive rest or inactivity. Rather, she frequently urges McIntire to exercise – which she does not do. *Id*.  Similarly, the ALJ noted that none of McIntire's "treating or attending physicians observed marked functional limitations due to her

history of arthritis with chronic pain or describe her as being disabled due to her physical problems and pain." *Tr. at 26.* And, the ALJ noted that McIntire "has given a different account to her case manager that she is lying down mostly because of the stress of dealing with her son[,]" and not because of pain. *Tr. at 25.*

Fourth, the ALJ noted that McIntire's activities of daily living are inconsistent with her alleged functional limitations. For example, he observed that, although McIntire claims to have the inability to use her hands after writing a word or two, her testimony, and that of her husband, "obviously show[s] that she performs activities independently and she performs activities that require use of her hands, such as driving, fixing meals, taking care of her personal needs, and sometimes engaging in hobbies such as crocheting or quilting." *Id.* He noted that the evidence of record indicates that McIntire has a higher level of functioning than she alleges. He wrote that her activities include

> getting up daily early in the morning to make her husband's
> lunch, she goes out with her husband on Fridays, she is
> regularly visiting a web chat room on Saturdays on a site
> that she enjoys, and she drives herself to appointments at
> least once a month. While these activities are not extensive,
> they belie the notion that she cannot get up and do things if

so motivated.

*Id.*

All of the foregoing observations, which the Court finds to be supported by the evidence of record, indicate that the ALJ properly applied ordinary credibility evaluation techniques in assessing McIntire's credibility. *Smolen*, at 1283-84 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  The Court cannot substitute its own interpretation of the evidence for the ALJ's interpretation.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citation omitted).

## C.   **Vocational Expert Testimony**

McIntire argues that the ALJ erred in failing to adopt the vocational expert's answer to a hypothetical question "which incorporated all limitations of the treating physicians as well as the limitations described by [McIntire]" – an answer which stated that McIntire would be precluded from performing full-time work. *Court Doc. 13 at 28.*

As discussed in detail *supra*, the Court already has determined that the ALJ did not err in his assessment of McIntire's credibility with respect to her symptoms and limitations.  Thus, the ALJ was not required to include in his hypothetical question to the vocational expert McIntire's own version of her symptoms and limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").  Rather, the ALJ was free to consider the evidence as a whole in making his determination as to McIntire's limitations.  The Court concludes that he did so, and thus he did not err.

## VII.  <u>CONCLUSION</u>

Based on the foregoing,

**IT IS RECOMMENDED** that the Commissioner's decision denying DIB and SSI be affirmed, McIntire's motion for summary judgment (Court Doc. 12) be DENIED, and the Commissioner's motion for summary judgment (Court Doc. 15) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States

Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 28th day of March, 2011.


/s/ Carolyn S. Ostby
United States Magistrate Judge